IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEPHEN V. RODE and,
BIOTRONICK, INC.,

                    **Plaintiffs,**

v.                                                 1:06-cv-02448-WSD

ST. JUDE MEDICAL, S.C., INC.

                    **Defendant.**

## ORDER

This matter is before the Court on Defendant St. Jude Medical, S.C., Inc's ("Defendant") Motion to Dismiss, Stay, or Transfer, and Motion to Compel Arbitration [8] ("Motion"), Plaintiffs' Opposition to Defendant's Motion to Dismiss, Stay, or Transfer, and Opposition to Defendant's Motion to Compel Arbitration [18], and Defendant's Reply Brief in Support of Motion to Dismiss, Stay, or Transfer, and Motion to Compel Arbitration [19].

### I.   BACKGROUND

Plaintiff Stephen Rode ("Rode") was a sales representative for Defendant, selling cardiac rhythm management devices ("CRMDs") pursuant to an employment agreement (the "Agreement") with Defendant entered into on May 30,

2000.  Rode alleges that he voluntarily terminated his employment with Defendant on April 1, 2006, and began working for Plaintiff Biotronick, Inc. ("Biotronick").  Biotronick is engaged in the business of selling medical devices similar to those sold by Defendant.

On October 12, 2006, Plaintiffs filed the present Complaint seeking declaratory judgment that the restrictive covenants in the Agreement are invalid and unenforceable.  Plaintiffs desire for Rode to sell competing medical devices within Georgia, although to do so appears to violate at least the restrictive covenant portion of the Agreement.

Defendant responded to the Complaint with the present Motion.  Defendant asks the Court to: i) enforce the Agreement's choice-of-forum ("COF") clause and transfer this case to the District of Minnesota; ii) stay the case and enforce the Agreement's arbitration clause, compelling the parties to arbitrate in Minnesota; or iii) dismiss the Complaint.

Plaintiffs respond that Georgia has a strong public policy against restrictive covenants in employment agreements that Minnesota courts are unlikely to recognize.  Plaintiffs further argue that transfer to Minnesota would be

inconvenient, because the locus of the dispute, relevant documents, and potential witnesses are all located in or accessible from Georgia.

For the reasons below, the Court grants Defendant's Motion to Transfer. Finding that the District of Minnesota is the proper forum for the action, the Court defers the remainder of Defendant's requests for consideration by the District Court for the District of Minnesota.

## II.   DISCUSSION

### A.   Legal Standard

The Eleventh Circuit sets forth "the following principles . . . for consideration of whether a case should be removed to another jurisdiction pursuant to a forum selection clause":

> 1. Forum selection clauses are enforceable in federal courts.
>
> 2. Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law, under 28 U.S.C. § 1404 (a) . . . not state law.
>
> 3. The burden is on the party opposing enforcement of the forum selection clause to show that the contractual forum is sufficiently inconvenient to justify retention of the dispute.

> 4.  The validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general.
>
> 5.  Under § 1404 (a), the court should consider the convenience of parties and witnesses and the interest of justice, with a choice of forum clause a significant factor that figures centrally in the district court's calculus. . . .
>
> 6.  By enforcing the contractual forum, the Court is not attempting to limit the plaintiff's usual right to choose its forum, but is enforcing the forum that the plaintiff has already chosen.
>
> 7. The financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause. . . .

P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807-08 (11th Cir. 2003) (internal citations and quotations omitted).  Where a valid choice of forum clause exists, there is "no reason why a court should accord deference to the forum in which plaintiff filed its action.  Such deference . . . would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system."  In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989).   Forum selection clauses are enforceable if they are "freely and fairly negotiated by experienced business professionals" and in the absence of "fraud, duress, misrepresentation, or other misconduct that would bar the clause's enforcement" or

"intervening and unexpected occurrences between the contract's formation and the filing of the suit [such that] the contract's purpose would be frustrated if [the clause was enforced]." Id. at 573-74.

Accordingly, this Court considers first whether the COF in the present contract is enforceable. If it is, the Court then considers whether Plaintiffs have met their burden to show that a transfer to Minnesota would be sufficiently inconvenient to overcome the presumption created by the Agreement.

    B.    Enforceability of the COF Clause

As an initial matter, the Court finds that venue could permissibly lie in the Northern District of Georgia under 28 U.S.C. § 1391(a)(2) as the "judicial district in which a substantial part of the events or omissions occurred." Plaintiffs allege that Rode's sales for Defendant occurred in this judicial district, and that the effects of the restrictive covenant in the Agreement would be felt here. Venue also, however, may lie in the District of Minnesota under § 1391(a)(1) as the "judicial district where any defendant resides. . . ." Defendant is headquartered in Minnesota.

The COF clause, found at § 11.H of the Agreement, reads:

> Exclusive Jurisdiction. Subject to the provisions of
> Section 10 above, all actions or proceeding [sic] relating

-5-

>to this Agreement will be tried and litigated only in the Minnesota State or Federal Courts located in Ramsey County, Minnesota.  Employee submits to the exclusive jurisdiction of these courts for the purpose of any such action or proceeding, and this submission cannot be revoked.

Plaintiffs do not contend that any fraud, duress, or misrepresentation occurred during the Agreement's formation.  Plaintiffs also do not claim any "intervening or unexpected occurrences" such that the purpose of the contract would be frustrated if the COF clause were enforced.  Plaintiffs instead contend that the COF clause is unenforceable because:

>If the action is transferred to Minnesota, the Minnesota court will undoubtedly . . . apply Minnesota law to the dispute.  Therefore, in effect, enforcing the forum selection clause is . . . . contrary to well-established Georgia law providing that choice of law clauses in employment agreements will not be enforced when doing so would subject an employee to law that is less favorable to the law of Georgia and therefore violate Georgia public policy.

(Pls. Opp. at 16-17.)

Although Georgia has a strongly-held public policy against unreasonable restrictive covenants in employment contracts, and Minnesota law does not appear to share this same public policy concern with the same intensity as Georgia, Plaintiffs' argument is nonetheless unpersuasive.  Plaintiffs do not offer any

support for their claim that the Agreement's choice of <u>forum</u> provision is actually or functionally equivalent to a choice of <u>law</u> provision–that is, Plaintiffs have failed to show that a Minnesota court will necessarily apply Minnesota law, rather than Georgia law, to this dispute.

In Minnesota, a "conflict of law exists if choosing the law of one state over the law of another state would be 'outcome determinative.'" <u>Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.</u>, 590 N.W.2d 670, 672 (Minn. App. 1999). That is likely to be the case here, because a Georgia court would likely find the restrictive covenants unenforceable in whole as a matter of public policy, and a Minnesota court might not. Georgia law "applies strict scrutiny to restrictive covenants in employment contracts." <u>Keener v. Convergys Corp.</u>, 342 F.3d 1264, 1268 (11th Cir. 2003). Unlike Minnesota, Georgia "does not employ the 'blue pencil' doctrine of severability." <u>Id.</u> (quotations omitted). <u>Compare</u> <u>Hilligoss v. Cargill, Inc.</u>, 649 N.W.2d 142, 147 n.8 (Minn. 2002) (recognizing the "blue pencil" doctrine).

When courts in Minnesota find a conflict of substantive law, they apply a five-factor choice-of-law analysis to determine which state's law applies. <u>Jepson v. Gen. Cas. Co. of Wis.</u>, 513 N.W. 2d 467, 469-70 (Minn. 1994). The factors are:

"(1) predictability of the result; (2) maintenance of interstate . . . order; (3) simplification of judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." Id.

The law that a Minnesota court would apply to the present case is not easily discernable under these factors. The "predictability of result" and "advancement of the forum's governmental interest" factors might favor application of Minnesota law. In view of the circumstances of the contract's formation and Georgia's strongly-held and uniform public policy pertaining to restrictive covenants, however, these factors could just as easily favor the application of Georgia law. How a Minnesota court will apply these factors in unclear. The "maintenance of interstate order" and "simplification of the judicial task" factors, in light of Georgia's strongly held public policy, would counsel the Minnesota court to apply Georgia law, with the likely result of refusing to enforce the restrictive covenants.

Contrary to Plaintiffs assertions, the application of Minnesota law by a Minnesota court is not a foregone conclusion. Plaintiffs' claim that a Minnesota court "will undoubtedly" apply Minnesota law is self-serving conjecture, not supported by decisions of Minnesota courts. In fact, Minnesota courts in recent cases have applied the laws of other states when they believed that applying their

own law would disrespect the public policy of that state.  See, e.g., Schumaker v. Schumaker, 676 N.W.2d 685, 691 (Min. App. 2004) (applying Iowa law to a dispute, in part because "Iowa has stated its public policy interest in encouraging participation in agricultural activities. . . . Applying Minnesota's law in the face of such an economic and public policy would indicate disrespect for Iowa law.").

Plaintiffs at most speculate that a foreign court might apply law contrary to Georgia public policy, and argue that this possibility justifies refusing to enforce an otherwise valid foreign selection clause.  Plaintiffs do not cite any authority to support this argument, and they fail to distinguish Georgia authority holding that choice of forum provisions are enforceable in cases involving restrictive covenants in employment contracts, and thus do not themselves violate Georgia public policy.

As recently as 2000, Georgia courts have held in similar circumstances that "absent case-specific evidence that . . . enforcement of the [foreign selection] clause violates public policy, we will enforce the clause."  Iero v. Mohawk Finishing Prods., Inc., 534 S.E.2d 136, 139 (Ga. App. 2000).  Iero directly addresses the "viability if a forum selection clause in an employment contract that contains a noncom petition covenant."  Id. at 138.  The Georgia Court of Appeals

held specifically: "This case involves the issue of whether a forum selection clause in an employment contract may be enforced when the contract also contains noncompetition and nondisclosure covenants that violate Georgia's public policy. . . . [W]e hold that such a forum selection clause can be enforced." Id. at 137.

Plaintiffs argue that Jenkins Brick Co. v. Bremer, 321 F.3d 1366 (11th Cir. 2003) mandates that this Court retain jurisdiction of the case notwithstanding the COF clause. Bremer, however, does not apply. In Bremer, the Eleventh Circuit determined that a transferor court in Alabama had committed "clear error" in ruling that venue in Alabama was proper when it transferred the case, because "if venue in Alabama is deemed proper, Alabama law will likely be used to uphold a non-compete agreement that is contrary to the fundamental public policy of Georgia." Id. at 1371. In this case, unlike Bremer, enforcing the COF will not result in the likely application of a law contrary to Georgia public policy. Under the Jepson test, a Minnesota court might well apply Georgia law in deference to Georgia's strongly held public policy. There also is no indication that a Minnesota court will refuse to recognize that venue lies in this transferor court, thus there is no concern that a Minnesota court will not consider whether Georgia law should

apply.

    C.    <u>Transfer</u>

Because the COF clause is enforceable, Plaintiffs must show that transfer to Minnesota "will be so gravely difficult and inconvenient that [they] will for all practical purposes be deprived of [their] day in court." <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 18 (1972). A motion to transfer under § 1404 (a) "calls on the district court to weigh in the balance a number of case-specific factors. The presence of a forum-selection clause . . . will be a significant factor that figures centrally in the court's calculus." <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988). Other factors, such as the convenience of the forum and the parties' relative bargaining power, must be considered in light of "the parties' expressed preference for that venue." <u>Id.</u> Although such other factors "might 'conceivably' militate against a transfer . . . the venue mandated by a choice of forum clause rarely will be outweighed by other 1404 (a) factors." <u>In re Ricoh Corp.</u>, 870 F.2d at 573. Where a forum selection clause exists, Plaintiffs' choice of venue–usually a strong factor opposing transfer–is not accorded deference. <u>Id.</u>

Section 1404 (a) factors include:

> (1) the convenience of the witnesses; (2) the location of
> relevant documents and the relative ease of access to

> sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

In light of Rode's expressed preference for adjudication in the District of Minnesota, Plaintiffs have not shown that a transfer to that venue would be so inconvenient as to deprive them of their day in court. While the Minnesota forum may be inconvenient for Plaintiffs, and possibly for some of the witnesses anticipated to be called in this dispute, that inconvenience is outweighed by Rode's express agreement to litigate in a specified forum. Plaintiffs admit that they have sufficient means to litigate this dispute in Minnesota. (Pl. Opp. at 12.) Defendant claims that its records and other documents are kept in Minnesota.

Plaintiffs note that "there is no forum selection agreement between St. Jude and Biotronick." The underlying dispute, however, concerns entirely the Agreement between Rode and the Defendant. Just as the necessity of filing any dispute in Minnesota was foreseeable for Rode, it was foreseeable for Biotronick when it chose to hire Rode while he was still governed by the Agreement.

Biotronick is an Oregon company, headquartered in Oregon. Litigation in Minnesota will not be more inconvenient for it than litigation in Georgia. Biotronick's involvement in this case is solely a result of its willingness to hire a salesperson subject to a restrictive covenant and its desire for that salesperson to compete with Defendant. In other words, Biotronick chose to sue to invalidate the Agreement for the purpose of enhancing Rode's–and thus its own–ability to compete with Defendant. This is precisely the outcome the Agreement seeks to avoid. The Court does not see any injustice in requiring Biotronick, like Rode, to abide by the Agreement's forum selection clause.

In the absence of a showing that transfer would, through inconvenience or otherwise, deprive Plaintiffs of a fair adjudication of their dispute, the Court will enforce the COF clause.

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, Stay, or Transfer, and Motion to Compel Arbitration [8] is **GRANTED IN PART** and **DEFERRED IN PART**. Defendant's Motion to Transfer is **GRANTED** and this action is transferred to the District of Minnesota for resolution. The Clerk of Court

is **DIRECTED** to process this matter for transfer to that judicial district.

Defendant's Motion is **DEFERRED IN PART**, in that the Court will not address its Motions to Compel Arbitration or to Dismiss.

    **SO ORDERED**, this 20th day of December, 2006.

                                            _____
                                            WILLIAM S. DUFFEY, JR.
                                            UNITED STATES DISTRICT JUDGE